The President
delivered the opinion of the Court.
This being an application to a Court of Equity, to restore a lost deed to its legal validity, it becomes important to consider whether the deed, if restored, has *373 any legal force. It is the deed of the grandfather, for slaves, to which he had, at the time, no title. For upon the state of the case, the title appears to have been in Applebury, the father.
But it is said, that this deed was made with the consent and privity of Applebury, and therefore ought to bind him : to this there are two answers, 1st. It is admitted, that if a man has an equitable title only, and stands by, and suffers another to purchase without disclosing his title, he is guilty of a fraud, which shall defeat him of his equitable claim. But it is supposed, that a legal claim could not be so lost, even in favor of a purchaser; and it is doubted, if even an equitable claim would be destroyed by that circumstance, in the case of a mere voluntary conveyance.
But 2dly. Suppose the children had this equity against their father, it is but an equity, which may be opposed by circumstances of superior equity on the other side, especially on behalf of the grandfather, who was a fair purchaser, and had his deed delivered to him without the same having been recorded.
The whole transaction was fair. The grandfather, who was bound to give Lucy to Applebury, conveyed her to his children, with his consent and approbation. The next day an agreement was made between the same parties, to substitute a valuable consideration for Lucy, and this, not with any fraudulent view, but upon the laudable motive of. gratifying the wishes of the slave. The consideration was paid ; Lucy re-delivered; and the deed restored to the grandfather. And now, the grand-children are endeavouring to set up this voluntary deed, made .upon a contract between their father and grandfather, who agreed without any fraudulent intention to change the contract, and to cancel the deed, whilst it was in their power to do so, (it not being recorded,) notwithstanding their father’s estate was thereby augmented, in consequence of the consideration paid for Lucy. So that they have a chance at least, of receiving an equivalent, if they should get Dinah and the two other slaves purchased with the 601.f which the father may give them in lieu *374 of Lucy. The grandfather has already paid Applebury, his wife’s fortune; and if the plaintiffs were to succeed in this suit, they would compel the grandfather to pay it over again.
Upon the whole, the plaintiffs have neither law nor equity in their favor. The defendant Anthony has both, and the decree of the Chancellor is right. But it may be necessary to distinguish this case from that of Ward v. Webber et. ux. (ante p. 274,) where a voluntary conveyance by a father to a child, being cancelled by the father, was restored to its legal validity :■
1st. In that case, the father was' proprietor of the estate, and had a power to convey. In this, the grandfather had no title, and this original defect was to be supplied in equity by the consent of the father, and so liable to be opposed by superior equit}\
2dly. In that case, the deed was delivered into the daughter’s keeping, who was of full age, and was privately cancelled by the father, without her consent; in this, the children, if they were in being, had no hand in the transaction, nor had they even the deed. The father who consented to accept it, relinquished it the nest day, and gave it up to the donor.
3dly. The defendant in that case, was a mere volunteer-; here he is a fair purchaser for a valuable consideration, so that the cases are wholy dissimilar, and the decrees perfectly reconcileable.
Decree affirmed.(1)

 Taylor v. Cole, 4 Munf. 351. Ward v. Webber, ante, p. 279,